76136. PENNINGTON v. CECIL N. BROWN COMPANY,
INC. et al.
(371 SE2d 106)

CARLEY, Judge.

Appellant-plaintiff is a member of the congregation of appellee-defendant Mount Paran Church of God, Inc. (Church). As appellant was leaving a worship service in February of 1985, she slipped and fell on a patch of ice which had accumulated on a Church parking lot. The parking lot was one of several improvements which had been constructed for the Church by appellee-defendant Cecil N. Brown Co., Inc. (Contractor) and which the Church had, at the time of appellant's fall, already accepted from the Contractor as completed projects. As the result of her fall on the ice, appellant initiated this tort action against both appellees. Appellant alleged three theories of recovery: Negligence; Nuisance; and, Strict liability. Both appellees answered, denying the material allegations of the complaint, and each subsequently moved for summary judgment. The trial court granted appellees' motions. Appellant appeals from the order which granted summary judgment in favor of appellees.

1. Urging that genuine issues of material fact remain as to the

Contractor's liability, appellant enumerates the grant of summary judgment in favor of that appellee as error.

Appellant cites extensively to foreign authority. Regardless of the law in other jurisdictions, however, the law of Georgia is settled with regard to a contractor's liability for finished projects which have been accepted by his employer. "The general rule in such circumstances as exist in the instant case is that 'the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection. [Cits.] There are, of course, well recognized exceptions to this general rule. One such exception is that the contractor is liable where the work is a nuisance per se, or inherently or intrinsically dangerous. Another is that the contractor is liable where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons. [Cits.] If the work performed by the contractor is not shown to come within one of the exceptions to the general rule, when the work is finished by him and accepted by his employer, the liability of the former generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective conditions of the work. [Cit.]' [Cits.]" *Derryberry v. Robinson*, 154 Ga. App. 694, 695-696 (2) (269 SE2d 525) (1980).

The undisputed evidence of record is that, at the time of appellant's fall, the Contractor had long since finished the parking lot and the other improvements which it had been engaged to build on the Church property and that the Church had accepted those improvements. The evidence also shows without dispute that any alleged "defects" in those improvements made to the Church property by the Contractor could not be considered to be hidden. See generally *Tison v. Eskew*, 114 Ga. App. 550 (151 SE2d 901) (1966). The undisputed evidence of record further negates the applicability of any exception to the general rule of the Contractor's non-liability for such observable and allegedly defective conditions in those improvements which had previously been accepted by the Church. See generally *Young v. Smith & Kelly Co.*, 124 Ga. 475 (52 SE 765) (1905); *PPG Indus. v. Genson*, 135 Ga. App. 248, 250 (2) (217 SE2d 479) (1975); *Cox v. Ray M. Lee Co.*, 100 Ga. App. 333 (111 SE2d 246) (1959). Accordingly, the trial court correctly granted summary judgment in favor of the Contractor as to appellant's negligence count and as to her nuisance count as well. See generally *Cox v. Ray M. Lee Co.*, supra at 335 (2).

As to appellant's strict liability claim, it is clear that the Contractor is not the manufacturer of any allegedly defective personal property which it sold as new property. The Contractor is, instead, merely the builder of improvements to real property. Compare *Mike Bajalia,*

*Inc. v. Amos Constr. Co.*, 142 Ga. App. 225 (235 SE2d 664) (1977); *Long Mfg., N.C. v. Grady Tractor Co.*, 140 Ga. App. 320 (231 SE2d 105) (1976). It would, therefore, necessarily follow that the grant of summary judgment in favor of the Contractor was also correct as to this third theory of recovery which was advanced by appellant.

2. Appellant also urges that the trial court's grant of summary judgment in favor of the Church was erroneous.

Our analysis in Division 1 would be equally applicable with regard to the disposition of the nuisance and strict liability claims which appellant asserts against the Church. Therefore, we now hold that the trial court likewise correctly granted summary judgment in favor of the Church as to those claims and our holding in this regard needs no further elaboration.

3. Our holding in Division 1 with regard to the negligence claim that was asserted against the Contractor would not, however, necessarily be dispositive of the negligence claim which appellant asserts against the Church. While the duties and responsibilities of appellees are similar, they are distinguishable and different. See *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 92-93 (3) (296 SE2d 579) (1982). The Church is the owner and the occupier of the land and, as such, it has the duty to exercise ordinary care to keep the premises safe for its invitees. See OCGA § 51-3-1. Thus, the issue to be resolved is whether, construing the evidence most favorably for appellant, a genuine issue remains as the Church's breach of the duty, which it owed as a landowner, to keep the premises safe for appellant, who was an invitee thereon.

As indicated, appellant was, at the time of her fall, an invitee of the Church. See generally *Cox v. DeJarnette*, 104 Ga. App. 664 (123 SE2d 16) (1961); *American Legion Dept. of Ga. v. Simonton*, 94 Ga. App. 184 (94 SE2d 66) (1956). Thus, cases which concern the duty owed by landowners to licensees, such as *Nixon v. Edmonson*, 177 Ga. App. 662 (340 SE2d 278) (1986) and *Evans v. Parker*, 172 Ga. App. 416 (323 SE2d 276) (1984), are factually distinguishable and inapplicable authority in this case. Accordingly, reliance upon such cases is misplaced as authority for the grant to the Church of summary judgment as to appellant's negligence claim.

The Church urges that the trial court nevertheless correctly held that the decision in *Auerbach v. Padgett*, 122 Ga. App. 79 (176 SE2d 193) (1970) and *McIntyre v. Corp. Prop. Investors*, 160 Ga. App. 868 (288 SE2d 584) (1982) mandated the grant of the motion for summary judgment as to appellant's negligence claim. Those cases do concern invitees rather than licensees. In both *Auerbach* and *McIntyre*, the plaintiff-invitee made a conscious decision to step upon a surface which she visually perceived to be different from the surface of the immediate surrounding premises. The plaintiff in *Auerbach* de-

liberately stepped into what appeared to her to be a "wet place" on a walkway, the surface of which walkway was otherwise dry. Underneath the "wet place" on the walkway, however, there was ice. The plaintiff in *McIntyre* deliberately stepped into what appeared to her to be a "dark patch" on the surface of a parking lot, the surface of which parking lot was otherwise dry and free of ice or any other dark patches. The "dark patch" on the parking lot proved, however, to be ice. In each case, the conscious decision of the plaintiff to step into the "patches" which differed from the surrounding surface, coupled with her awareness of the existing climatic conditions, showed that her knowledge of the alleged defect causing the fall was at least equal to that of the defendant-landowner.

When the evidence in this case is construed most strongly in appellant's favor, she, entirely unlike the plaintiffs in *Auerbach* and *McIntyre*, did not consciously choose to step onto a "wet" or "dark" surface which appeared to her to be visually *different* from the immediately surrounding surface. Appellant testified that, notwithstanding her maintenance of a lookout ahead, it appeared to her that she was stepping down onto the black asphalt of the parking lot and that, "[p]rior to [her] fall, [she] did not and *could not see* any ice in the area. After [she] fell, [she] looked back and saw that [she] had fallen on ice, which was black, and which was up against the curb, but not thick enough to reach the top of the curb so that the same *was invisible* while walking along the walkway north toward the asphalt area, but could be seen only after passing the curb and looking back towards [the C]hurch." (Emphasis supplied.) Thus, according to appellant, it had appeared to her that she was stepping down onto the black asphalt surface of the parking lot, not that she was stepping down onto a surface which differed from the black asphalt of the parking lot. It was only *after* she had fallen and viewed the area from the other side of the curb that appellant could determine that the surface upon which she had placed her foot was not the black asphalt of the parking lot, but black ice. This evidence does *not* demand the conclusion that appellant had at least equal knowledge of the icy condition which caused her to fall. To the contrary, it raises the issue of optical illusion. "This court cannot say, as a matter of law, that such illusion, alleged to have been presented to [appellant], while approaching her car for the purpose of entering therein on that part of the parking lot in question, was not or could not have been so presented to the [appellant]. Such question is for the jury." *Smith v. Swann*, 73 Ga. App. 144, 145 (3) (35 SE2d 787) (1945). This evidence of optical illusion would preclude a finding that, as a matter of law, appellant had at least equal knowledge of the alleged defect which caused her to fall. See *Shackelford v. DeKalb Farmers' Market*, 180 Ga. App. 348, 350 (2) (349 SE2d 241) (1986). Compare *Bowman v.*

*Richardson*, 176 Ga. App. 864 (338 SE2d 297) (1985); *Anderson v. Dunwoody North &c. Club*, 176 Ga. App. 210 (335 SE2d 451) (1985); *Purvis v. Holiday Hills &c. Assn.*, 163 Ga. App. 387 (294 SE2d 592) (1982). Accordingly, the decisions in *Auerbach*, supra, and in *McIntyre*, supra, are factually distinguishable and are, therefore, inapplicable authority in this case. The trial court erred in relying upon those cases in granting the Church summary judgment as to appellant's negligence claim.

4. In granting the motion for summary judgment, the trial court further held that there was no evidence that the Church had superior knowledge of the black ice. However, the evidentiary burden as to the Church's superior knowledge is not one which appellant would be required to bear before trial, unless and until the Church, as the movant for summary judgment, had met its initial evidentiary burden of showing its *lack* of superior knowledge of the black ice. It would appear that the trial court concluded that the Church had met its initial evidentiary burden based, in part, upon certain affidavits submitted by the Contractor in support of its motion for summary judgment, wherein several Church members stated that the patch of ice had been obvious to them. The trial court apparently concluded that these affidavits would show that appellant's knowledge of the black ice was, or at least should have been, equal to that which the Church had as to the existence of the defect.

For purposes of the Church's motion for summary judgment, the evidence submitted by the Contractor to show that the black ice may have been obvious to others would, however, have no conclusive bearing upon appellant's equal knowledge of the black ice onto which she stepped. The affidavits do not necessarily conflict with and certainly do not negate appellant's own assertion that the black ice had presented an optical illusion to her as she approached it. The material issue is whether appellant, not the affiants, had been presented with an optical illusion under those circumstances which had surrounded *her* approach to the black ice. The black ice may have been obvious to others who encountered it, but, if, from appellant's perspective, it had presented an optical illusion, a genuine issue of material fact would certainly remain as to her lack of equal knowledge. Construing the affidavits most favorably for appellant, they *may have created* a genuine issue of material fact as to the existence of an optical illusion, but they certainly *did not eliminate* the existence of a genuine issue of material fact as to appellant's equal knowledge. The affidavits were, therefore, not a basis upon which the trial court could properly have based its grant of summary judgment in favor of the Church.

5. If the affidavits of the two Church members which were submitted by the Contractor cannot serve as the basis for the trial court's grant of the Church's motion for summary judgment, the question be-

comes whether those affidavits should have served as the basis for the trial court's denial of the motion.

If the Church's motion for summary judgment was erroneously granted, it was for one of two reasons: Either the Church failed to meet its initial evidentiary burden and the burden therefore never shifted to appellant or the Church did meet its initial evidentiary burden and appellant then successfully met the burden which had been shifted to her. The Church chose to meet its initial evidentiary burden by attempting to show that, under the evidence, appellant had at least equal knowledge of the black ice. As we have held, however, construing the evidence most favorably for appellant would show that, as the result of an optical illusion, she had *no* knowledge of the alleged defect.

This construction of the evidence of record as showing that the black ice had presented an optical illusion to appellant would not, however, also show that the Church must *likewise* have been without the requisite actual or constructive knowledge of its existence. The evidentiary effect of showing the existence of an optical illusion is merely to explain the *plaintiff's* failure to have seen the defect. However, the evidence of the optical illusion does not demonstrate that the defendant likewise had no knowledge of the existence of the defect. See generally *Shackelford v. DeKalb Farmers' Market*, supra, wherein a genuine issue of material fact remained as to the moving defendant's "fault," notwithstanding a favorable evidentiary construction for the non-moving plaintiff as to the existence of an optical illusion. Construing the evidence most favorably for appellant, the Church simply failed to show that appellant had equal knowledge, and the burden never shifted to appellant to come forward with *any* evidence that the Church's knowledge was superior to hers.

Thus, even assuming that the affidavits of the other Church members submitted by the Contractor could be construed as evidence that the Church itself had knowledge of the black ice, that evidence is simply not relevant to any material issue which was raised in the context of this motion for summary judgment. The issue of the Church's knowledge will, of course, *become* a material issue at trial when appellant must meet the evidentiary burden of showing that the Church had superior knowledge. It would be incorrect to intimate, however, that, in the absence of the affidavits of the other Church members submitted by the Contractor, the Church's motion for summary judgment should have been granted. The proper disposition of this case is not to hold that the trial court erred because the affidavits of the other Church members demonstrate that appellant met her evidentiary burden of showing that a genuine issue of material fact remains as to the Church's superior knowledge of the black ice. The proper disposition of this case is to hold that, construing the evidence most

favorably for appellant, the Church, as the movant, failed to meet its initial evidentiary burden of showing that appellant had equal or superior knowledge of the alleged icy defect on its premises. See generally *Shackelford v. DeKalb Farmers' Market*, supra. Compare *Filmore v. Fulton-DeKalb Hosp. Auth.*, 170 Ga. App. 891 (318 SE2d 514) (1984). Accordingly, for this reason, we hold that the trial court erred in granting the Church's motion for summary judgment as to appellant's negligence theory of recovery.

6. The trial court correctly granted summary judgment in favor of the Contractor as to all theories of recovery. The trial court correctly granted summary judgment in favor of the Church as to all theories of recovery except that of the Church's alleged negligent breach of the duty that it owed to appellant pursuant to OCGA § 51-3-1.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Sognier, J., concur specially.*

DEEN, Presiding Judge, concurring specially.

While noting that it may be regarded by some as an anomaly of ambiguity that a church member should maintain an action for a slip and fall against the member's own church, an institution so concerned with the original Slip and Fall, I concur with Judge Sognier's special concurrence. The church was not entitled to summary judgment on the negligence claim only because of the affidavits of the other church members stating that the patch of ice on which the appellant slipped was obvious. Without those affidavits, construing the evidence most favorably for the plaintiff/appellant would have required a finding that the ice was not visible, which would have translated into summary judgment for the church because the parties' knowledge of the invisible hazard would have been equal.

It should also be noted that two cases cited by the majority opinion are physical precedents only, under Rule 35 (b) of the Rules of the Court of Appeals, and should be identified as such. Those two cases are *Mike Bajalia, Inc. v. Amos Constr. Co.*, 142 Ga. App. 225 (235 SE2d 664) (1977), and *Auerbach v. Padgett*, 122 Ga. App. 79 (176 SE2d 193) (1970).

I am authorized to state that Judge Sognier joins in this special concurrence.

SOGNIER, Judge, concurring specially.

I concur specially because church members in several affidavits contained in the record stated that there was ice present but that it was visible. These affidavits thus presented evidence in direct conflict with appellant's statement that the ice was invisible and further raised a material question of fact whether the church could reasona-

bly be construed as having knowledge of the ice. Hence, summary judgment in favor of the church on the negligence issue was improper.

DECIDED JUNE 8, 1988 —
REHEARING DENIED JUNE 23, 1988 —

*Charles E. Moore, Carolyn Mercer*, for appellant.
*Karen L. Jenkins, Arthur L. Myers, Jr., John M. Bovis*, for appellees.